Next case on the court's schedule today is People v. Stafford. That's case number 4140309 for the appellant. We have Mr. James Ryan Williams and for the appealee, Allison Paige Brooks. Before proceeding with arguments, I just want to advise all present that Presiding Justice Kinect is the third member of this panel. He cannot be here today. However, he's read the briefs and all the other materials. He will be listening to the audio recording and then participating in the ultimate decision that this court reaches. Having said that, you may proceed. James Ryan Williams Thank you, Your Honor. May it please the court. Mr. Brooks, my name is James Ryan Williams. On behalf of the Office of the State Appellate Defender, it is my privilege to represent Mr. David Stafford before this honorable court. This has been a bit of an unusual case because since the filing of the opening briefs, there have been a number of developments in the law and I believe there have been a total of eight different pleadings filed in this particular case. Now, these developments have both broadened and narrowed the issues on appeal and today I plan to focus on a couple of cases that I believe have substantially narrowed, if not entirely resolved, one of the central issues that's now before the court. Now, David Stafford was sentenced to a discretionary life without parole sentence and he filed a post-conviction petition where he argued that that sentence was unconstitutional under the then-recent decision of the United States Supreme Court in Miller v. Alabama. In Miller, of course, that was a landmark decision where the United States Supreme Court held that the mandatory imposition of life without parole is an unconstitutional sentence for individuals who were juveniles at the time of their offense. Now, in reaching this decision, the court held that individualized sentencing and specifically the individualized consideration of youth and all of its attendant characteristics is an Eighth Amendment prerequisite to the imposition of a life without parole sentence. And because individualized sentencing and individualized consideration of youth is not possible under the mandatory sentencing schemes that were at issue in Miller, the court categorically banned the mandatory imposition of life without parole. Thereafter, the Illinois Supreme Court in Pupil v. Davis and then subsequently the United States Supreme Court in Montgomery v. Alabama held that this decision does apply retroactively regardless of the finality of the decision. However, because Miller involved the mandatory imposition of life without parole, the question remains whether or not Miller actually applies to a life without parole sentence that was imposed within the discretion of the trial court. And that, of course, is one of the central issues that's now before this court. Now, as I argued in my opening brief and as, in fact, the Seventh Circuit subsequently held in McKinley v. Butler, which was one of the cases that I filed the first motion to cite supplemental authority on, but as I argued and as the Seventh Circuit held, Miller applied to every individual who received a life without parole sentence for an offense that was committed when they were a juvenile regardless of whether or not that sentence was imposed mandatorily or discretionarily. And the court held this, and I argued that this is indeed true, because Miller's reasoning and the concerns that it addressed, the lack of individualized consideration of youth, these concerns are present regardless of whether or not the life without parole sentence was imposed mandatorily or discretionarily. And, in fact, I believe that the question of whether or not Miller applies to a discretionarily imposed life without parole sentence has actually been resolved by the Montgomery v. Louisiana decision, the most recent decision from the United States Supreme Court on point. And to be clear, that was the subject of my third motion to cite supplemental authority. And it seems that the state actually agrees on this point to some degree as well. Now, admittedly, Montgomery, like Miller, did involve a mandatory life without parole sentence. And, of course, the central issue there was just simply whether or not Miller applies retroactively. Significantly, however, in holding that Miller did announce a new substantive rule that applies retroactively, the court explained that life without parole is an unconstitutional sentence for all but the very rarest juvenile offenders, and in that way made clear that this should be an exceedingly rare sentence. Now, notably, in Montgomery, the United States Supreme Court did not say that Miller only banned mandatory life without parole, but instead the court spoke of all life without parole sentences. Now, this was a point of significance in the very recent decision out of the first district here in Illinois of People v. Nito. And this, of course, was also a subject of my third motion to cite supplemental authority. Now, People v. Nito, the first district, held that Miller applies retroactively even to a de facto life sentence that was discretionarily imposed. And so I believe that these three cases, McKinley, Montgomery, and Nito, I believe that these cases largely resolve the issue of whether or not Miller applies to a discretionarily imposed life sentence. And as I noted before, it seems that the state agrees on this point. And I see this because in the final pleading filed here in this court, the state's response to our motion to cite Montgomery and Nito, the state acknowledged, without regard to any distinction between a discretionary and a mandatory life sentence, that following Montgomery, those individuals who received a life without parole sentence for a crime committed as a juvenile are entitled to a hearing where they are given the opportunity to show that their crime reflected transient immaturity and not permanent incorrigibility. Now, in light of McKinley, Montgomery, and Nito, it seems here that the central issue has been substantially narrowed to, in essence, how it is in Illinois that we will procedurally implement Miller substantive guarantees. And on this point, the Montgomery court, the United States Supreme Court made clear in Montgomery that because of federalism principles, each state has the right to decide how to procedurally implement Miller's substantive guarantees. Now, in its motion, excuse me, in its response to our motion to cite the Montgomery decision, the state suggests that it is the post-conviction court that should hold an evidentiary hearing where the individual is provided this opportunity to show that their crime reflected transient immaturity. Now, what this seems to suggest is that the state believes that the hearing should be held at the third stage of post-conviction proceedings. And we would submit that this does not seem to be an appropriate inquiry for stage three because, of course, the question at stage three is whether or not the individual's constitutional rights have been violated. And so, in this context, it seems like the appropriate inquiry there would be whether or not the original sentencing hearing complied with Miller. If it did, then, of course, the petitioner's Eighth Amendment rights would not be violated, the petition should be denied. If, however, upon this third stage of evidentiary hearing, the post-conviction court determines that the original sentencing hearing did not comply with Miller, then, of course, the petitioner's Eighth Amendment rights have been violated, the petition should be granted, whereupon then, I think it would be appropriate for the individual to get the Miller-Montgomery hearing, if you will. And with respect to that hearing, I do believe that this would be an actual resentencing hearing. And I say this because, according to the Montgomery decision, and I quote here, the procedure Miller prescribes is a hearing where youth and its attendant characteristics are considered as sentencing factors. And so it seems clear that the Supreme Court is contemplating that a Miller-Montgomery hearing, again, if you will, would in fact be a resentencing hearing. I will note here, however, that although the state acknowledges that as a general matter, people similarly situated with life without parole sentences are entitled to this hearing, the state here nevertheless concludes that David is not. And the state argues that this is the case in the briefing, as well as its response to our motion to cite supplemental authority, because in the state's opinion, the trial court back in 2003 sufficiently considered youth, and in that way, complied with Miller, and thus, according to the state, his Eighth Amendment rights were not violated. Now, we of course disagree with this position, as we did in the briefing. But I would actually submit that it seems that at this point, this would not actually be an appropriate determination. And I say this because this is an appeal from a Stage 2 dismissal. And in light of Montgomery and other developments in the law, we believe that remand for further post-conviction proceedings would be most appropriate, because it seems that it's the trial court that should have the opportunity to first pass on the question of whether or not the original sentencing hearing complied with Miller. So just to briefly summarize my argument here today, so first of all, of course, we believe that Miller applies retroactively, regardless of whether or not the life without parole sentence was imposed mandatorily or discretionarily, and for the reasons outlined in the brief, which I believe are supported and bolstered by subsequent developments in the law. It seems that the appropriate procedure in Illinois for these matters would be that the affected individual would file a post-conviction petition, and then ultimately that the post-conviction court would have a hearing on the limited issue of whether or not the original sentencing hearing complied with Miller. Of course, if it did not, then the individual would then be afforded the Miller-Montgomery hearing. And then here again, because this is a Stage 2 dismissal, we believe that remand for further post-conviction proceedings would be most appropriate. Before I conclude, I would just like to note that after Miller, every kid in our state who now faces potentially a life sentence is afforded the protections contemplated in Miller. After Davis, by our Supreme Court, and after Montgomery, every juvenile who received this life without parole sentence, even before Miller, is entitled to these same protections. Left out of this Constitution protected is a small group of individuals, based on the study I cited in the briefing, I believe it's roughly 20 people, one of which is my client, David Stafford, who committed presumably less egregious offenses because it didn't mandate the mandatory position of life. And yet these individuals are not being afforded the same Constitutional protection, and I just believe that they are entitled to the very same Constitutional protection, regardless of whether their sentence was mandatorily imposed. Counsel, before you run out of time, do you have any argument or comment you want to make about the statutory scheme under which your client was sentenced, which required that he should have been 18 at the time of the commission of the offense? Yes, Your Honor. Certainly, I believe that under the statutory scheme that rendered him eligible, or I should say ostensibly rendered him eligible for this life sentence, under the statutory scheme as constructed because the, I refer to it generally as the life eligibility statute in my briefing, incorporates, I believe it's the death penalty statute by reference. Because it incorporates the various aggravating factors, each of which, as I argued, is subject to the limiting provision that he had to be 18, that in fact, he was never, for that reason alone, eligible for the life sentence. Now, I would note for this court, the primary reason I stayed away from that argument today is because, of course, the argument in my assessment is predicated on the Castleberry decision and its potential retroactivity, whether or not the Boyd sentence rule is abolished retroactively. And to that end, I would just note, in case the court is not aware, and I very recently learned, but the question of whether or not Castleberry is retroactive is currently pending in the Illinois Supreme Court. One of the cases I cited in the briefing, People v. Price out of the First District, which, to be clear, I cited for other reasons, but as I understand it, in that particular case, the briefing was completed, but the Illinois Supreme Court actually ordered supplemental briefing on the specific question of whether or not Castleberry applies retroactively. And as I understand it, that briefing is now complete, and we're awaiting that decision. And so I believe that that would then control, essentially, this court's ability to reach the Boyd sentence issue of, well, basically all three issues discussed in Argument 1. Would you agree that if we were to find Castleberry does apply retroactively, we would still need to address the arguments you have made with regard to Miller and Montgomery? Yes, if Castleberry applies retroactively, and thus this court is unable to reach, yeah, I believe we would still have to address the arguments in Argument 2. But in conclusion, if there are no further questions by the court, I would just respectfully ask that this court find that Miller does, in fact, apply retroactively, regardless of whether the life sentence was imposed mandatorily or within the discretion of the trial court. And then, accordingly, remand this matter for further post-conviction proceedings. Okay, thank you, counsel. You will have rebuttal. Thank you, sir. Ms. Brooks. Good afternoon, Your Honors. I'm Allison Paige Brooks, appearing on behalf of the people. May it please the court, counsel. First of all, I'd like to start with Castleberry retroactivity. Castleberry actually is the exception to a general rule, a general rule that new decisions apply both prospectively and retroactively. Of course, Teague itself has its own exceptions that can lead to confusion when the defendant claims that generally new decisions of the court only apply prospectively. That is, to cases that are currently pending on direct appeal but not collaterally. This case is on collateral review. The defendant's conviction is final. However, the defendant is tempted to invoke rules designed to preserve the state's interest in the finality of judgments in order to further his interest in undoing the finality of the judgment against him. Teague is not something the defendant is entitled to invoke. Only the state can. It is a one-way street. And so, for that reason, the general rule actually is that, applying the general rule, because the elderly Supreme Court in Castleberry never specifically limited the temporal scope of its decision in Castleberry. That decision does apply, and the defendant may not insist on applying Arna and Boyd's sentence rule, which has been overruled, over the state's objection. Are you aware that there's contrary authority now in the First District in People v. Smith? Yes, I am, Your Honor. And in the Smith decision, I was very curious because the analysis in that case reached a conclusion on the issue of whether Castleberry was a new rule. And in deciding it was not a new rule, decided that the reason why was because Arna was the institution of the Boyd sentence rule, but the state has found that the Boyd sentence rule goes back much further than that. The reason why Castleberry reached this decision is because the amendments to the judicial article in the previous Constitution, which were incorporated in the Illinois Constitution in 1970, which provides the jurisdiction of the circuit court. And for that reason, if a court has jurisdiction, it's not limited by a statute. And so therefore, a sentence such as this one, which the defendant claims is in violation of the statute, and lacks statutory authority according to the defendant's claim, is not cognizable on cloud review, independently that is, because it is not a Boyd judgment after Castleberry. It's no longer recognized as being a Boyd judgment. We now understand the benefit of Castleberry's analysis of the Constitution. Circuit court jurisdiction is derived from the Constitution, not from the statutes. So a naturalized sentence here, the trial court had jurisdiction to impose it back in 2003, even though Castleberry was not decided until last year. So for that reason, the sentence is not Boyd, only voidable, potentially voidable. And the defendant may not collaterally challenge it, particularly when he did not even raise this issue about the statutory validity of sentence in his post-commission petition. So therefore, that type of forfeiture may not be overlooked by this court, which does not possess the supervisory authority to do so. So the defendant, if not admitting, certainly suggested in his brief that Castleberry was not a new rule of criminal procedure, right? And if so, the T analysis doesn't make any difference. Right. Well, see, that's the other point I was going to make about Smith, is that the defendant's position originally, before Smith was decided, was that Castleberry was a new rule. Smith says, no, it's not. But then the problem with Smith is Smith then decides, well, if it's not a new rule, it may not be applied retroactively. And I just cannot understand that. You can't understand it because it doesn't make any sense. They say one thing, and then they do something else. Yes, I'm sorry, Your Honor. Essentially, a new rule is subject to Teague, and not a new rule is not subject to Teague, and therefore can be applied retroactively, because it's not subject to Teague's exception against the general rule of retroactivity. So for that reason, all the issues in the defense-versus-argument are not before this court. The defendant should be required to file a motion for a petition for successive post-conviction petition, executive clemency, mandamus, something else, but not in this appeal. With respect to Miller, now that we have the benefit of Montgomery v. Louisiana, which was not at the time of the initial briefing in this case, the analysis in Montgomery v. Louisiana is what should guide this court in determining this, because it does clarify Miller is a substantive rule, and so therefore it does apply retroactively, even though the defendant's conviction and sentence are final. The substantive rule of Miller means that life without parole is unconstitutional in violation of the Eighth Amendment for a class of juvenile offenders who claim to reflect transient, immaturity of view. And the Nito case that he cites is a classic example of that, someone where a youth had been involved in a gang, subject to peer pressure, and gets involved in a murder. And because that was the classic situation where they recognized that susceptibility to peer pressure erodes as someone ages. Also, Nito was a case where the trial court's findings did not imply that it had believed that the defender in that case, Nito, was among the rarest of juvenile offenders whose crimes showed that he was permanently incorrigible. And so the facts and the lack of trial court finding, although Miller, I'm sorry, is that there does not have to be an explicit finding about the child's incorrigibility. And in this case, it does not really contain that per se, but there is an implicit finding of incorrigibility inside the trial court's findings in this case. Here, after looking at the voluminous documents detailing the efforts to rehabilitate the defendant in Iowa starting around age 12, it showed that he was violent and dangerous for most of his young life, and because of those unsuccessful attempts to rehabilitate him, in combination with the senseless brutality and vicious nature of the crime in this case, which he invaded a woman's home to steal stuff, then he encountered her and stabbed her 45 to 55 times, killing her. And that is the type of conduct that is different from Nito. That's the kind of conduct that's much closer to the case cited in the state's response to the defendant's motion to supplement authority, which is the Holman case. Holman case involved a woman who was killed in her farmhouse. And in that case, it's distinguishable only in this respect that Holman was an offender who had been on a spree of murders. He had committed, I think, three other murders before that one. But he committed those at a time before multiple murder became a mandatory life sentence. So Holman was a case where the defendant got a discretionary life sentence at a time when multiple murders were subject to discretionary life sentence and not mandatory. But the reviewing court found that the procedure that the trial court engaged in was adequate to comply with the requirements of Miller. And in this case, it should be the same, because what happens is the trial court takes the unsuccessful attempts to rehabilitate him since age 12, combined with the type of crime this was, and concluded that natural life was, quote, the only viable sentence for this defendant. And only viable sentence for natural life without parole means that this defendant cannot be redeemed, cannot be rehabilitated, and must be kept from society for the rest of his natural life. And that is, in essence, the finding of requirements. And there was consideration of youth here. And this is not like NITO where there's no implication that this is such a rare, horrible juvenile that he has to be kept away for the rest of his life. This is the trial court's judgment. And this is reached after consideration of youth. And although it's not a lengthy transcript in the trial court's ruling analyzing this, there was plenty of information for the court to understand what type of juvenile this was, what had been done to help him in the past, all the various statements and acts that he had made. One of the most telling ones, if I could refer to, was that he had told in 1992, he told a teacher at age 8, he likes to play that he is stabbing people and wants to be a murderer when he grows up. How prophetic. That's exactly what happened to him. And that never changed since the time from he said that until the time he started to get close to adulthood. And nothing that the state of Iowa or his parents, anything, could change that. That's who he is. The trial court recognized that, gave him a natural life sentence, and that is constitutional under the Eighth Amendment, because Miller did not categorically deny life without parole sentences for juveniles who are permanently incorrigible, like this defendant, as the trial court found implicitly. So there's some disputes as to what the defendant is entitled to. If he is, in fact, makes an arguably, I mean, a facially valid claim, if he says that this should go on to further post-conviction proceedings. So just assuming that the defendant's petition was sufficient to survive the state's motion to dismiss, then this court would have to, at least the argument I would have to address, is what would be the appropriate remedy. And to go straight to resentencing is not appropriate, because that essentially presumes that the defendant was entitled to a remedy in the first place. That it presumes that the defendant's sentence in natural life without parole violated the Eighth Amendment and therefore needed to be resentenced. So it's not a resentence hearing that is what is needed in order to determine whether the defendant's sentence violated the Eighth Amendment in the first place, but some sort of evidentiary hearing. And the evidentiary hearing provided in Montgomery v. Alabama referred to a procedure to show that the prisoner falls within the protected category where youth and attendant characteristics can be considered as sentencing factors. Sentencing factors doesn't necessarily mean that he's entitled to a whole new sentencing hearing. It means, is considering youth and attendant characteristics of youth, should he have received the sentence of natural life without parole? And if he should not have because the prostitution forbids it, then he would be entitled to a new sentencing hearing at that point. So if this court finds that there is a necessity to vacate the dismissal of this petition and remand further proceedings, it should be for an evidentiary hearing on the defendant's claim that his sentence is in violation of the Eighth Amendment and not for simply a resentencing hearing. Now the defendant also says that his sentencing hearing itself did not comply with Miller. But the point is actually whether the sentence itself violates the Eighth Amendment, not the procedure. Because the procedure is limited under Montgomery v. Louisiana, the U.S. Supreme Court recognized that they are not going to tread too much, as is more than necessary, into the state's administration and their own criminal justice system. So the procedure provided under Montgomery v. Miller is very limited for that respect. Simply the minimum necessary to enable the defendant to show whether he falls in the protected class or not. And because the state's position is that the sentencing hearing that was already held in this case back in 2003 sufficiently shows that he does not, in fact, fall within the protected class, his post-conviction petition was properly dismissed without an evidentiary hearing. And any other claim the defendant wants to raise should wait for their proceedings. So for those reasons, I thank the Court for the time and also request this Court to affirm. Ms. Brooks, I have a question for you. I want to make sure that I understand the collateral estoppel argument in your brief. That's only if we were to find that Castleberry is prospective only. If we were to find it to be prospective, in effect, you're saying the defendant should be bound by collateral estoppel as to the minority issue? Correct. In terms of the Williams case analysis about the jury verdict forms and the special interrogatory, all those arguments are only subject to this Court finding that Castleberry does not apply because of the retroactivity issue. I think if the defendant's position is even that, that he cannot get past that threshold, then all that first argument is essentially over with at that first issue. So any other questions, Your Honor? No, thank you. Rebuttal? First of all, the State argued here that the trial court basically implicitly found that David's conduct, David's defense, represented permanent incortability. To that end, however, I would note that each of the decisions that I have cited at supplemental authority, McKinley, Montgomery, Nito, each of these decisions makes an explicit point that at a minimum, it is possible that when viewing a defendant's offense through the lens of Miller and considering that children are different, that they are less morally culpable, that they have an underdeveloped sense of responsibility, all these Miller considerations, that it's at least possible that the individual would receive a lesser sentence. And the State also argues that the trial court here sufficiently considered youth. Now I will note, as the State did in its reply, David's age was mentioned a number of times in sentencing. However, almost every one of these times it was mentioned as really nothing more than a chronological fact. He was 12 years old when this happened, etc. Now, of course, the judge did admit that he struggled with the defendant's age, but again, similar to my first point, this is not the type of individualized consideration of youth and all of the attendant characteristics that are contemplated in Miller. And finally, I would just note that, as the Montgomery court made clear, the central intuition of Miller is that children who commit even heinous crimes, and I'm just slightly paraphrasing here, they do use the word heinous, that children who commit even heinous crimes are capable of change and rehabilitation. And as the Montgomery court explained, that is the central intuition of Miller. And unless this court has any further questions, I would just respectfully ask that this Honorable Court remand this matter for further post-conviction proceedings. Thank you very much for your time. Thanks to both of you. The case is submitted. The court stands in recess.